and we will move on to the second case set for argument today, which is Ellis versus County of Pierce. That's case number 24 dash 13 61. Good morning, Your Honors. May it please the court, I'm Jana Hartman. I represent the appellants in this matter. I would like to reserve three minutes for rebuttal, please. This court always has jurisdiction over questions of qualified immunity when there are no material disputed facts. In this case, the court has jurisdiction over this interlocutory appeal regarding qualified immunity because at the time of seizure, there is no disputed fact that Deputy Redding had probable cause to arrest Miss Ellis for domestic violence assault. And in addition, the nature or I'm sorry, the duration. Wait, wait, wait. There's no probable cause that they could have arrested her. That's no dispute. There's no dispute that there was probable cause that Deputy Redding, the Deputy Redding had probable cause to arrest Miss Ellis. Good. I thought we were going off on a different tangent. I misheard you. Okay. And counsel, just to jump to the chase, because I know you're going to give us the law correctly. Your very own brief and its headings talks about no factual dispute about things that, as I read it, the district court said there was a factual dispute. Your headings are no factual dispute that Ellis was evading the police. There's no factual dispute over the canine searches reasonableness. And then you sort of go on and say, well, there's factual support for this. I mean, aren't those the crucial items here? We can go into them specifically. But just in a general way, isn't a lot of your argument not really taking the facts as the district court has said are reasonably in dispute? I think there are three phases to this case. There is the pre-seizure search, then there is the seizure, and then there is the duration of the seizure. The headings that Your Honor just brought up relate to disputed facts in the pre-seizure search phase. But I didn't understand that was really the focus here. I thought it was there would be probable cause to arrest, there is probable cause to do a search, but then you get to the seizure and the duration of the seizure. So that's, to me, where the focus of the case is. And I agree completely. It's our position that dispute... There are disputed facts galore. Regarding the seizure and the duration of the seizure? Right. And I disagree. The seizure occurred at the point in time that Deputy Redding saw K-9 Zep in contact with Ms. Ellis underneath the boat trailer. That's the point in time... But isn't that one of the disputed facts? There's a factual dispute right there. She may have been drunk and she may be lying, but she made a declaration that she was walking across the yard and out of nowhere the dog attacks her. So the part about being under the boat, as a matter of fact, the officers may be completely correct, but isn't that wholly disputed? It is not because the court has the ability to determine the objective reasonableness of facts asserted. And for example, when you look at... If this were the other side, if it were the other side, but the district court made statements, findings that these things are reasonably in dispute. That's the only reason he would say that this sort of trilogy of immediate threats, severity of crime, risk of flight, that each of those he found were in dispute. Well, and those gram factors don't actually come into play until there's a seizure. The gram factors don't apply during the search phase. And when we look at the facts that our position and our brief points out that some of the what quote unquote were disputed facts in the district court's order are not actually supported in the record. And again... Oh, but that's an attack on the fact that isn't that exactly the sort of thing that Johnson v. Jones doesn't let you do, at least absent the video. I don't know if you're trying to rely on Scott v. Harris here, but generally absent things that are, as they said in Scott, beyond dispute through a video, you have to take what the district court said. And unfortunately, we don't have body cam video in this case. We have the CAD records that are probably most reliable regarding the timing of this. But you can also look at the reasonableness of Ms. Ellis' statements. Well, let me go back. I was going down the line of thought that you had about the boat. I was pretty curious about that. So I went back and tracked all the boat issues. They looked under the boat. At first, I imagined there was a boat and she was hiding under a boat, right? But then you see it's a trailer and it's open. And they'd been there a couple of times before. And she says, I wasn't under that boat. Why isn't that a factual issue? Because if you read Ms. Ellis' deposition testimony, her statements are inherently unreasonable. And the court does not have to take facts that are clearly... Okay. Why are they inherently unreasonable? I mean, she tells a story of, you know, yeah, she was drinking. She says she didn't even have a bottle with her. There's a dispute right there. She goes out. She's walking around in the rain in her PJs and her slippers. And then she's walking back to the house because then she's feeling like, well, where's she going to go? I don't know how we can judge her statements as being unreasonable when, you know, counterposed with the officers, other than to say they're basically in collision here on their statements. One example I have of just how unreasonable her statements are is that she says that the dog drug her around the yard for four minutes. That's objectively unreasonable, given the other testimony provided in the case and the CAD records. Right. But that would be exactly what you would do at trial. You would cross-examine her. That doesn't necessarily say that her other statements are exaggerated or unreasonable. I mean, that's the whole point of a trial. You know, I wanted to ask you about the cases cited. The district court looked fairly heavily at Watkins, which in my mind was pretty close on point, but then you appointed to Mendoza. But if you go to the specific language in Mendoza, the court basically says you don't have, every time there's a novel, factual situation or something different, that doesn't pop it out of the absence of immunity. So it uses language much like Watkins. Why do you think that the Mendoza gets you home in terms of qualified immunity? Because in Mendoza, it involved a canine who was being removed from a hiding place, unlike in Martinez. That's a distinguishable fact. And the use of the canine was, the duration of the use of the canine was found to be appropriate in that case until they were able to secure the suspect. And that's similar to what Deputy Redding said was his reason for leaving canines up in contact with Ms. Ellis for that approximate 25 to 30 seconds. In Watkins, we were dealing with a circumstance where the officer had not been informed that there was a potential that the suspect was armed, unlike in this case. Wait, wait. The boyfriend said she's not a threat to anybody. Well, he changed his testimony on that fact. Oh, well, there we go. But again, it's not material to this court's determination of qualified immunity, because what we need to look at is whether what Deputy Redding's conduct was, was objectively reasonable. Then let me ask you, because I really wasn't focusing on this. It seems to me you're trying to distinguish really hard the search phase from the seizure. So let's take her walking around the yard. Is it your position that even if we agree that she was just walking around the yard, it was still not unreasonable for the dog to attack her? Yes, that's my position. Okay. And then further your position that there's no dispute that the officer only told the dog to search, not to bite and hold. I agree with that. Yes. Well, even though the officer himself says, well, you know, why did he bite? He says that's what he's trained to do. And that's what the expert says that he's trained to do. And Redding himself says, oh, she's supposed to search and then release. But how can he release if he wasn't biting? There's always a risk, and Deputy Redding acknowledged this in his deposition, that a bite could occur as a result of a search with a canine. That's why they provide warnings at the beginning. It gives a suspect an opportunity and knowledge that that is a potential outcome here. In this particular case, what occurred was as soon as Deputy Redding saw the canine's up in contact with Ms. Ellis, at that point in time is when we need to analyze whether the conduct of Deputy Redding violated Ms. Ellis's constitutional rights. Could you clarify when the warning was given? It was given approximately, I think the record said around six minutes after Deputy Redding's arrival on the scene. He had consulted with fellow officers, determined that there was probable cause. He had provided the warnings before he removed canines up from the vehicle. But then the time frame from the warning to the apprehension and bite was how long? Sixteen minutes. Right. Well, wait a minute. There are two quote warnings, aren't there? One is at the beginning of the search. Then the dog is recalled. He gives them a new search command and some kind of warnings. That's the way I read it, that this happens twice. I thought that was one of the arguments. Although I would say, given the circumstances of it being pouring rain in the middle of the night, this is sort of like King Lear on the heath, you know. There are such things as I know not what, and there's a dog here. But whether anybody's going to hear it, I mean, I've been on these cases where somebody is in a confined area hiding under a car and he's going to hear you, or the Chu case where he's hiding in the junkyard and you know he's going to hear. But I'm not faulting him, but to say that the person, Ms. Ellis, is liable in a sense because she didn't heed the warnings, shouldn't you have at least some evidence that she heard them? Could I just interject? Maybe you can help us. I only recall reading the record to have one warning, but maybe you can clear that up for us. Deputy Redding testified that he gave the warnings a few times. That's at ER 570, 751-52, and 754-55. And in addition, I would point out that there is no legal authority, at least in this circuit, that requires repeat warnings, especially when a canine is on a lead. And that is Beecher v. Tacoma, which is cited in our brief. Isn't the point that she was, I mean, there's at least some evidence that she was evading the police, right? Correct. And so doesn't our case law say, I thought this was the qualified immunity argument here, so help me out. I thought our case law said that if you're evading the police until you surrender a dog to bring the suspect into a surrender mode is okay. I would agree with that. I thought there was a factual dispute, though, about whether she knew that the boyfriend was on the phone with 911. And so then that kind of brings into play this whole, was she fleeing law force or was she just out there wandering around in some stupor and drunken state? But again, when we're looking at a qualified immunity analysis, we need to look at whether the conduct of Deputy Redding was objectively reasonable. Did he essentially have notice that what he was doing, either action or inaction, violated clearly established law? And at least in this jurisdiction, there is no case law that says the deployment to search and an unintended constitutes excessive force. Do you want to reserve? I would, please. Thank you. Okay. Thank you. And just let me say that I was wrong as to, given his second warning, he gave the dog a second search command, and I was confused on that. Good morning. My name's Tom West. I represent Jenny Ellis in this matter. The judge stole my opening line. There were disputed facts galore in the case. I'm not sure you're going to get a lot of pushback on that issue. I'm interested in the qualified immunity because, I mean, you still have to show that it was clearly established that this was a violation. And as I read our case law, until a suspect has been detained and surrendered, it's okay to use a canine in the process. And I take it you, number one, disagree with my articulation of our clearly established case law. But number two, if that were true, why would there still be no qualified immunity here? Well, using a canine is kind of a general statement. You know, what do you use a canine for? Are you going to use it to search? Is it bite? Do you have control of the canine? But even biting seems to be okay. I think I read our case law to say even a bite from a canine is okay. It doesn't seem to be until the threat is minimized. It seems to be until there's a surrender. And whatever else you say about the disputes here, there was not a surrender. She may not have heard. She may not have known. She may have been wandering. All of those factual disputes may be accurate. But there was not a surrender until the canine had taken hold of her. Well, I mean, even if you assume that, when the canine took hold of her, she had surrendered. But I don't think she had. The officer then said, put your hands up. And she didn't do that. And then he came over and... Well, of course, she couldn't because the dog had ripped her arm off practically, and she had her other hand on it. What was the damage here? Pardon me? What was the damage here? It was a left arm. And you may have seen the photos in the judges... Is there permanent damage or... Yes. Oh, yes. Nerve damage and muscle damage. But at a minimum, she couldn't raise the hand that the dog had. Yeah, she could. Well, in a way, the dog prevented her from surrendering if you're going to use this hands up as being a surrender. So she was prevented from doing that. So I don't really understand. I mean, this is something I did. And I just wanted to mention, there are three volumes of this. This is something new. I looked at it. It's Civil Rights and Civil Liberties Litigation by Namud, N-A-H-M-O-D. It talks about qualified immunity in a search situation. I'm sorry I even looked at it. It is. They're all over the place. The districts, the Supreme Court, and the Supreme Court is almost saying, unless we say it's not qualified immunity, it is qualified immunity until we've ruled on it, which is wrong, of course, and would take all the authority from you people in determining what factually would result in finding that there is no qualified immunity. But here, in this particular case, we have a situation where the facts are disputed, obviously, and the judge even found bad faith, evidence of bad faith on the part of the officer. Let's talk about that, because that basically goes to the state law immunity question, right? Well, it does, of course, but I think that's... You think it goes to qualified immunity as well? Well, I think so. Tell me the cases. Watkins seems to be what you rely on, right? Right. Do you rely on any other cases for the clearly established law? First of all, if there are disputed facts... The disputed facts have to go to... If there's a disputed fact, it has to be given to your client. I give you that. Under those facts, what is our clearly established law that you're relying on? It seems to be Watkins. Well, basically, what I have right here in front of me is, and I'll just quote it, and this is from Johnson. The Supreme Court explained that any portion of a district court summary judgment order that, though entered in a qualified immunity case, determines only a evidence sufficiency, which facts a party may or may not be able to... Let me just stop you. ...is not appealable. You're not answering my question. My question is, what is the clearly established law that's being violated here? Well, the use of excessive force under these particular... What is the case that makes clear that in this particular case, the use of force was excessive? We've cited that in our brief. I know... Cited Watkins. Explain to me why Watkins clearly establishes that the force here was excessive. Well, I can just use the facts of the case. There was no basis for the dog being allowed to attack this woman, who was even unaware that the police were involved. You're not answering my question. And I think that's where I'm having a problem with the clearly established, is you haven't really articulated it. You didn't do that in your brief, and that's why we're here. You may have a constitutional violation, but you still have to get past the clearly established prong. You didn't do it in your brief, and you're not doing it now. And I want to know why Watkins clearly establishes that the use here was wrong. Go through the facts of Watkins. Tell me how it's here, because I read our case law to say, until she surrendered, they can do this, that the officer can do this. And you haven't really disabused me of that notion. Okay. Well, all I can say is, under the circumstances, and you're asking me to cite the law. I'm asking you to cite the law because that's what you need to do. You're up here arguing a factual dispute. I give you that. I want to know the law and why it's clearly established. And I've asked you five times, and you can't answer the question. All right. And you've already indicated it's not in our brief. It's not. You cite to Watkins, but you don't explain Watkins. You don't walk through it. So I want to hear from you why this is clearly established. Well, if I could, I would, and I should. But at the moment, I'm at a loss, to be honest with you. But doesn't that sink your case? No. Well, you haven't explained why this is clearly established. What is the clearly established law? If you can't show clearly established law, you're done. They get qualified immunity. End of story. And you're telling me you can't give me a reason for why this is clearly established? Is it enough that the dog continued to bite for arguably 40 plus seconds? That's a dispute also. But the officer did not call off the dog. And I was going to talk about the facts that the judge wanted me to give him the law. But what I was saying and about to say is the dog continued to bite. Isn't that the best law for you from Watkins? It is. Isn't that where you need to get under? Well, if the dog continued to bite and was allowed to bite. After what point? Well, after she was restrained. Now, if you're saying that she had to surrender first, but was unable to surrender because she couldn't lift her hands to indicate she was surrendering. Wasn't biting both hands. Did she? Is there an indicate? What is the indication that she actually, if the dog was released, that she wouldn't have tried to escape? The officers were not there on the scene. Does Watkins stand for the proposition that the officer needs to release the dog until he gets there to actually detain her? There was no evidence that she was trying to escape anything. Well, there's evidence that she was trying to escape. It's disputed. Well, that's disputed. It's disputed. I think you seem to be at a loss for the cases cited in your brief. But what I think the county did well is they laid out some of the factors, which is, basically, is there an immediate threat to the officers? What's the severity of the crime? Whether she, in this case, is actively resisting arrest. And that's what, of course, Judge Nelson is asking about. And none of those things existed from a factual standpoint, based on whether the decision... Tell me why resisting arrest doesn't exist. How would she resist arrest? She wasn't resisting arrest. She actually was walking around and was surprised that someone had called the police. But here she was, wet and dripping and drunk, and decided to go back to her home, which is a place of safety for her. And then she's immediately attacked by the dog. There is no indication that she was trying to evade the police because she didn't know the police were there. Right. Is your argument that they never should have used a dog in the first place? Or is your argument that they allowed the bite to last too long? Well, I would say that they probably didn't need to use the dog. But if they did, they should have controlled the dog and they should have given her warnings. The only warning they gave her was when she wasn't even there to hear it. And then... But isn't that viewed as to the objective officer? I mean, why would the officer... Assume that they thought she was trying to evade them. I know there's a factual dispute on whether she was or not. They give a warning. What more did they need to do? Did they need to go get a blow warning? Did they need to get consent from her and say, please tell us you've heard the warning? No, no, I'm not saying that at all. I'm saying he properly did a warning initially saying, come on out if he thought she was in a particular location, but she wasn't there. She was a block away. But doesn't that go to the point that maybe they needed to use a dog then? Because they couldn't find her. Well, they didn't really look. I mean, they just stayed there at the home and eventually she was called and she talked to a friend and she talked to her son, I think, and then she walked back. So that's hardly evidence of evading the police. So I don't understand. How long, in your view, we have this dispute about how long the dog bite was. We don't have the video camera. How long was the excessive force? Was it all 41 seconds? Was it 20 seconds? How long was the excessive force? Well, as soon as he bit her. Then he should have called it off that time. Oh, sure. There was no reason to have her bite. She wasn't threatening anyone. The officer had been told she wasn't a threat. I guess this is my point. As I read the cases, until the officer was objectively convinced that she had surrendered, and I know you're saying she couldn't have raised her hand, whatever. So say that couldn't happen. But doesn't the officer have to have an assurance that she has objectively surrendered at that point before the dog is released? If that's the law, do you still win here because there's no qualified immunity? Did the officer keep the dog on the bite after it was objectively reasonable to assume that she had surrendered? I don't think there's any question about it. Why? Tell me why. Because she couldn't do anything. She was under the control of the dog. How long was the dog on the bite after the officer actually was there present with her? Well, I'm sure for her, it seemed like hours. I read the record, and perhaps counsel can help us. The officer comes around the trees very quickly, just a few seconds was what I saw, that he sees the dog, and then he gets into the agitation. But of course, he, taking the evidence on that side, he uses a dog who is trained to bite people no matter what. Right. And at that point in time, why is he doing that? All he's doing, remember, he started out as a search, and then all of a sudden it becomes a biting situation. Do you think it matters how long the dog was biting your client? Not really. I think the fact that the dog is biting my client under those circumstances certainly deprives her of her rights, her constitutional rights, not to be attacked like that under those circumstances, because the circumstances that existed don't support that type of police activity. It's a disputed fact whether she's a threat to anyone. But where's the case law that says that? Again, that may be correct for the constitutional analysis, but where's the case law that clearly establishes that? Well, if we made reference... Because Watkins doesn't establish, I don't think, at least the position you just said, which is they shouldn't have used the dog at all. Right. There was no reason to. But Watkins doesn't establish that. Well, Watkins may not, but this is a different case. And all these cases that I saw in this book are all fact-specific. They're all related to particular facts that relate to this claim of qualified immunity. And you have to determine whether under these circumstances, whether qualified immunity would apply. Can I just ask you one more question on this claims? So you sort of alluded to bad faith here. I thought the bad faith was largely predicated on an officer's comment that we will teach her a lesson, right? Yes, that was part of it. Yes. That was not the canine handler's comment, correct? No, they said, we will teach her a lesson. I know, but the canine officer was not there at that time, did not hear that. Well, you can't assume that they didn't communicate about what the situation was. Is there facts to suggest that the canine handler was trying to, quote, teach her a lesson, or was aware that that had even been said? Well, it certainly was in the mind of the judge who decided that the testimony of that officer was not credible. And, you know, he wasn't being truthful. And when you have things like that that occur in a trial or pre-trial, then you've got to wonder what really his intent was and whether he was acting in bad faith in releasing the dog, which is what he did, either through his incompetence or what, I don't know. Because if you recall, the dog senses were heightened when she was in the area. You recall that. So what does he do? Does he control the dog? Does he say, come on out, or the dog will bite? No, the dog takes off. It's all slack. It's a 30-foot leash. And then by the time he comes around to find the dog, it's latched onto my client's arm. He didn't control the dog like he should have. And then after that, I mean, that's one thing, you know, the dog bit. But then he allowed the dog to continue to bite and to say, and this is where I think the credibility of the officer was questioned by the district court judge, he said, well, she didn't surrender. She didn't raise her hands up and indicate she was surrendering. So he continued to bite. That borders on absurdity. And frankly... And how long was that period? Well, how long does it take a dog to rip up somebody's arm? 40 seconds? 30 seconds? That's not my question. That's not my question, counsel. My question is, how long after the officer said, you know, surrender, did the bite last? Now, Judge Boggs, I think, has suggested that it might have been still, I guess, 15 to 20 seconds. Is that accurate? Well, first of all, I don't know that anyone knows the exact, they weren't counting the seconds while the dog... If we look at the dispatch stuff, that's where we get the 40 some seconds from at the high end. I think the 15 to 20 is from one of the witnesses. But it's, you know, you're right, you can tear your arm off in five seconds, but we've got a range in this area, you know, if that's what's important. Well, I think it was long enough, excuse me for interrupting, but to get to your point, I think it's certainly long enough for him to pull the dog off and not allow the dog to bite her anymore. He clearly decided not to do that because he gives his reasons. That is, he says that I told her to raise her hands and she didn't. Now we can decide whether that's a reasonable statement or not, but that's where it starts, isn't it? Yeah. And we don't even know if he did say that, but his testimony is questionable throughout and him saying surrender or something like that, we're not sure that was even said. Does she say that she heard that? No. She didn't hear anything. She's busy fighting off a dog. She just doesn't want to get injured anymore than she already is. And then, of course, the officer pulls her out from under the boat with... Well, he only does if you take their facts. I thought your facts are she wasn't under the boat. Well, what happened was she was in the yard when she was attacked. It's reasonable to assume that she's trying to get away from the dock and where she ended up under the boat. We don't know. It is speculation. One of the other officers says he sees them out in the yard on the grass. So the whole boat, I mean, it's sort of going both ways. A bogus boat issue. Yes. In a way, you're right. You're right. All right. Well, look, we've taken you well over. And I apologize for not being able to to say something specific about the law, but these things are so fact specific as they relate to qualified immunity. We'll go back and take a look at it. We have your argument. So thank you, counsel. Thank you. We'll give you rebuttal time. Counsel, I have a question with regard to the state law claim on immunity under the statute. Do you think it's possible to have qualified immunity but also for the officer to not have qualified immunity, excuse me, but for the officer to have immunity under the state statute or do they rise and fall together? I do not think they rise and fall together. I think the standard is different between the two of them. I would like to take all of these facts that have kind of come out today in the light, of course, most favorable to Miss Ellis as the court is required to do. Let's assume that the contact occurred in the yard and lasted for 41 seconds. We still need to evaluate the qualified immunity analysis under whether Deputy Redding's conduct at that point in time was objectively reasonable. And the case law, the controlling precedent in this jurisdiction says that what he encountered on at that time that he saw contact was objectively reasonable. We have, we cited numerous cases in our brief. The Miller case were a bite of a duration of 45 to 60 seconds where a suspect had been ignoring officer warnings and hiding in the woods. The Hernandez case, a bite of almost one minute did not violate clearly established law. The Judge case, a bite of over two and a half minutes until this... So those had other circumstances. They did. And that's why I think both Mendoza and Watkins tell us to go through this litany of issues and why you're not, you're not going to have to have a case exactly like this with some lady near or not near a boat who got bit by a dog. You know, I mean, neither the Supreme Court nor the Ninth Circuit demands that kind of specificity, right? They do not. I agree with the court on that fact, but we do need to look ultimately when we're talking about the seizure and the duration of the seizure at the gram factors, which we really have hardly even discussed here today. And I heard some comments that... But let's look at the gram factor because I think the only gram factor that really is in your camp here, and it may or may not be enough for qualified immunity, is the lack of surrender. I mean, because I'm not so sure about the risk of harm. You think that that supports you? I think it's a significant factor and because... I mean, they were told that she didn't have a gun. She had a bottle of alcohol, apparently. They were told, and she disputes this, that she left the house with a bottle of alcohol. We acknowledge that that is a disputed fact, whether she did or not. But the question for the court is what did Deputy Redding know at the time he made the decisions that he did or did not? And he testified about DV calls being inherently dangerous. DV calls are to be considered in an excessive force case. They're included in the pattern jury instructions, for example, as a factor that the jury is to consider when evaluating whether the force used is excessive or not. So to discount the fact that this was a domestic violence case... Okay, that's fair. To look at what had happened. But I mean, I guess maybe I'm myopically focusing on the surrender issue. I mean, is that a fair... I mean, tell me what your view is on the surrender issue. At the time that the surrender occurred, surrender or seizure, I don't know if the court sees those as... I actually view them as differently. Okay. I don't... I guess I need to look at the case law a little more clearly. Well, and I can't cite... I don't know of cases that talk about... Well, what I can say is that I think at this point in time, they're the same point in time. Because it's when... I think it's when Deputy Redding sees K-9 Zep in contact with Ms. Ellis. That is when the analysis occurs regarding whether there was clearly... What's your... What's the bet? What is your position on what that time frame is? Well, my position is that it was 25 to 30 seconds in the record, but taking... When he saw it, from when he saw the dog... Until removal. Until removal. But let's assume it's 41 seconds. Would he have released it earlier? I guess he could have. If he had given the command, the dog would have released. He could have, and as soon as he gave the command, the dog released. He testified, and it is not... It is unrefuted in the record. He went through some mental process to not do it before that. He did, and he explained... And that process seems to be at odds... Seems to be materially disputed facts that underlie that. I mean, I know why he said what he said. Judge didn't give much credence given the whole history of his testimony, but we'll give him credit for what he said, but you've got to give her credit for what she said. But what she says about that period of time is that she doesn't have a recollection, but specifically at ER... Talking about the time frame. She said it could be... Right. Four minutes. Sure. I understand that there's a dispute, but again, I want to direct the court back to what the qualified immunity analysis is, and it is the determination of whether the conduct, the action or inaction by Deputy Redding was violating Ms. Ellis's constitutional right and whether there was clearly established precedent that would give him, as an objectively reasonable officer on the scene, to know that his conduct was unconstitutional. I guess the way I would put it to you, and I'd be happy to get your answer, that on the view of the facts, he's using a dog that is trained to bite anybody that he finds in a circumstance where, on her view of the facts, she is not fleeing, she is not a threat, and has a crime that is no severity. Whereas in Hernandez, you have an actual flight, he's fleeing DUI. They know that that's a problem, and so they say under those circumstances, it's okay, or he has qualified immunity. Whereas here, if you take all of the circumstances together, you have this drunk woman wandering around and Redding using a dog that will bite anybody that finds them, that the dog finds, that's what happens. And I may get myself in trouble here going out on a limb, but I ask the court whether there's a bit of implicit bias in that analysis, because what if this was a Mr. Ellis who had assaulted a Mrs. Van Kirk and her 15-year-old daughter and left into the dark rain with a bottle, incredibly intoxicated. Would the court, would we be here today? Is that what a jury might well find? I mean, you may well, I mean, assuming that you have to go to trial, if you did, you may very well win this case. But on the other hand, you know, when people see Ms. Ellis on the stand and see Deputy Redding on the stand, they might have, might view that things that the district judge, who had all the facts, thought were reasonable, were in fact reasonable. On the other hand, they may find that they're not. And just to summarize, it's my position that the court does have jurisdiction to establish whether qualified immunity exists, because the relevant and material disputed facts to the qualified immunity analysis are not actually in dispute that period of time from seizure through release. So, thank you. Okay, thank you. Thank you to both counsel for your arguments in the case. The case is now submitted and that concludes our arguments for this morning.
judges: Boggs, McKEOWN, NELSON